# BYLER & BLAKE LLC
Attorneys at Law

Penn Mutual Towers
510 Walnut Street, 9th Floor
Philadelphia, Pennsylvania 19106



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/18/09

ANTHONY L. BYLER

Telephone: 215 238-9300
Facsimile: 215 238-9301
tbyler@bylerblaker.com
www.bylerblaker.com

May 15, 2009

**MEMO ENDORSED**

A premotion conference will be held on June 1 at 10:30 am
SO ORDERED
[signature] USDJ
5-18-09

<u>VIA FACSIMILE (212) 805-7949</u>
<u>& FEDERAL EXPRESS</u>

The Honorable Kevin P. Castel
United States District Court for the
Southern District of New York
500 Pearl Street
New York, New York 10007-1312

Re: <u>Zaccaro v. Shah, et al., Case No. 08-CIV-3138</u>

Dear Judge Castel:

Please accept this letter as Defendants' request for a *pre-motion conference*. For the reasons identified below, the Defendants are entitled to summary judgment pursuant to Fed. R. Civ. P. 56 on each of the Plaintiff John Zaccaro's claims.

The instant dispute arises from a Pennsylvania limited partnership, named Affordable Hospitality Associates, L.P. ("**Affordable**" or "**Partnership**"), formed by the Plaintiff and a number of the Defendants for the purpose of building, owning and operating a Hampton Inn Hotel in Philadelphia, Pennsylvania. The construction of the Hampton Inn ran over budget and the Hotel performed poorly over its first five years in operation, losing over one million dollars per year.

Mounting losses led several Defendants to seek additional capital contributions from the Plaintiff (in 2004 and 2005) in order to keep the Hotel afloat. Plaintiff refused to put in additional capital, and instead decided to sell his interests in the Partnership to Defendant Nish Capital in November of 2005. Three months after the Plaintiff sold out, 80% of Affordable was sold to Hersha Hospitality Trust ("**HT**"). Almost two years after that, on October 1, 2007, the remaining 20% of Affordable was sold to HT.

Shortly after the 2007 transaction, the Plaintiff filed this action, claiming that he had been defrauded into selling his interests. He also claimed the Defendants breached fiduciary duties against him. Finally, the Plaintiff sought an accounting of the Partnership's books and records, and avers that one, some or all of the Defendants have been unjustly enriched by their alleged wrongdoing. For the following reasons, Defendants are entitled to summary judgment.

## I. Summary Judgment Standard

A motion for summary judgment may be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

The Honorable Kevin P. Castel
May 15, 2009
Page 2

issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). Once such evidence is identified, the non-movant must set forth specific facts showing that there is a genuine issue for trial. Id.

## II. Several Defendants are Entitled to Summary Judgment Because There is No Evidence That They Committed Any Wrongdoing.

### (a) Hersha Enterprises, Ltd.

The Amended Complaint does not set forth any alleged wrongdoing by Defendant Hersha Enterprises, Ltd. The lone substantive averment concerning Hersha Enterprises, contained in Paragraph 33, correctly states that Hasu Shah signed the October 1998 letter of intent to form a partnership, and he signed it as the president of Hersha Enterprises. That was Hersha Enterprises only involvement in this case because, as Paragraph 34 correctly states, Affordable Hospitality Associates, L.P. (the **"Partnership"** or **"Affordable"**) was created on March 15, 1999 among three partners: Hasu Shah, John Zaccaro and Stephen Guzzardi. ¶34.

Accordingly, Hersha Enterprises was never a partner in Affordable, and therefore could not have breached fiduciary duties (which form the basis for Counts I and III) because it did not owe such duties to the Plaintiff, could not have breached Affordable's partnership agreement (Count II), had no duty (or ability) to allow for an accounting of Affordable's books and records (Count V), and finally, Hersha Enterprises did not receive any money from any of the underlying transactions and thus could not have been "unjustly enriched" (Count IV). Consequently, Hersha Enterprises is entitled to summary judgment on all five counts of the Amended Complaint.

### (b) Hersha Hospitality Trust and Nish Capital, Inc.

Defendants HT and Nish Capital, Inc. ("Nish") were never partners in Affordable while the Plaintiff was a partner, and thus, as a matter of law, these Defendants did not owe the Plaintiff any fiduciary duties, did not owe a duty to provide an accounting, and could not have breached the partnership agreement. Accordingly, each Defendant is entitled to summary judgment on Counts I, II, III and V. Moreover, as the undisputed evidence demonstrates, Nish paid $203,000 for the Plaintiff's partnership interests and then quickly sold them for the same price to Hersha Capital without making any money, and thus could not have been "unjustly enriched." Accordingly, Nish is also entitled to summary judgment on Count IV.

## III. Plaintiff's Claims against All Defendants are Barred by the Doctrine of Accord and Satisfaction.

Plaintiff's claims are also barred by the defense of accord and satisfaction. To successfully assert this defense, the Defendants must demonstrate that there was: (1) a disputed debt, (2) a clear and unequivocal offer of payment in full satisfaction, and (3) acceptance and retention of payment by the offeree. PNC Bank, Nat'l Ass'n v. Balsamo, 634 A.2d 645 (Pa. Super. 1993).

In the case at bar, there was a disputed debt involving Plaintiff. Specifically, Defendants Shah and Patel believed that the Plaintiff (a fellow partner) owed a great deal of money to the Partnership. They argued that the Hampton Inn (the sole asset of the Partnership) had suffered losses of more than a million dollars per year, and that these millions of dollars of losses, to be shared equitably among the

The Honorable Kevin P. Castel
May 15, 2009
Page 3

partners, were covered by loans and capital contributions from only Defendant Hasu Shah and non-parties Hersha Capital, Inc. and Shreenathji Enterprises, Ltd.

Aside from making a small initial capital contribution in 1999 and a subsequent one in 2001, the Plaintiff refused to put in any money in response to his partners requests for additional capital to keep the Hampton Inn afloat. He also and refused to transfer his interests for an offered one dollar, notwithstanding his negative capital account because, as he testified at deposition, "I don't think there was a loss." Rather, Plaintiff claims that prior to selling his interests, he believed that the Defendants were paying themselves fees in order to "create losses" in an effort to deny him Partnership distributions and a better sale price for his interests. (Zaccaro Dep. Transcript at pp. 119:12-120:2). In short, Plaintiff believed that he was owed money by the Partnership and the Defendants contended that Plaintiff owed money to the Partnership. In other words, there were genuine disputes regarding payment of money and the value of Plaintiff's partnership interest.

But those disputes were resolved by Plaintiff's acceptance of a clear and unequivocal offer of payment for his Partnership interests in full satisfaction of Plaintiff's disputes. On November 3, 2005 Plaintiff sold his ownership interests in the Partnership to Nish, and received consideration in the form of, among other things, $203,000 and a release from liability for the personal guaranties that he had signed with ULLICO and PIDC (the Hampton Inn loans). The terms of the sale had been negotiated by Plaintiff, and were set forth in a written Assignment Agreement, drafted in large part by Plaintiff's attorney son, which transferred the partnership interests from Plaintiff to Defendant Nish. Plaintiff accepted this value, accepted payment, and his personal guarantees on the loans were satisfied. The parties' full performance of the Assignment Agreement resolved the disputes and removed Plaintiff from further Partnership obligations, and potential benefits, going forward.

Because the parties' Partnership dispute was resolved by a clear payment in full satisfaction of the disputed debt, and because the Plaintiff accepted the consideration in full satisfaction of the disputes regarding the value of his partnership interest, there has been an accord and satisfaction of the partnership value disputes, and Defendants are thus entitled to judgment on all of the Plaintiff's claims, which merely seek to re-open and renegotiate the value of Plaintiff's partnership interest based on events that occurred years after the sale.

### IV. The Breach of Fiduciary Duty Claims Must Be Dismissed as a Matter of Law.

Plaintiff claims that one or more of the Defendants breached a fiduciary duty to him by failing to disclose the possible sale of the Hampton Inn to HT at the time they were negotiating the purchase of Plaintiff's interests.

Although a partner, when acting within the scope of the common enterprise, has an obligation to act toward his partners with utmost good faith, that standard does not extend to transactions where the relationship between the parties broke down and became adversarial in nature. This is especially true when one of the partners is selling his interests to another partner. Walter v. Holiday Inns, Inc., 784 F. Supp. 1159 (D.N.J. 1992).

In Walter, the court found that the partnership had broken down, and therefore the partners no longer owed one another fiduciary duties because (1) the partners relations and communications were tense and contentious for an extended period of time, (2) one partner had requested an independent audit of the partnership's books because he did not trust his partner's representations regarding losses that the partnership's hotel was experiencing, and, (3) at the time of the alleged breach of fiduciary duty, the Plaintiff partner was selling his interests to one of the defendants. Walter, supra at 1168.

The Honorable Kevin P. Castel
May 15, 2009
Page 4

Based on these facts, the court held, as a matter of law, "that given the environment in which the parties were operating, it seems clear that traditional notions of fiduciary duty were inapplicable," and thus dismissed all claims based on fiduciary duty. Id. at 1170.

As in the Walter case, the Partnership in this matter had already broken down at the time of the alleged breach of fiduciary duty.

First of all, Plaintiff Zaccaro admitted in his deposition that his relationship with his partners had broken down. Communications between the parties had gone from a once-friendly relationship during which all partners met often to discuss partnership issues, to one where the Plaintiff was no longer talking to the partners, but rather enlisted his attorney to pen letters to the Defendants and their counsel that accused the Defendants of wrongdoing, stated outwardly that they did not trust the Defendants, and, on at least five occasions, threatened to sue the Defendants.

Second, the Plaintiff refused to contribute any money to the Partnership after 2001 because, as he testified, he thought that the Defendants were "creating losses" by making payments to several of their related companies, including the management company that ran the Hotel. While Plaintiff was refusing to put in any more capital, the Defendants were funding the Hotel's operating shortfalls every year from 2001 through 2005.

Finally, prior to the time that HT had even entered into a letter of intent to buy 80% of Affordable Hospitality Associates (the limited partnership who owned the Hampton Inn), the Plaintiff had already decided to sell his Partnership interests, which, as the Walter court recognized, could only further exacerbate the adversarial nature of the relationship among the "partners."

Because there was admitted breakdown in the Partnership and the relationship among the partners had become completely adversarial, and because the Plaintiff was selling his interests at the time of that adversarial relationship, the Defendants did not owe any fiduciary duty to the Plaintiff. Accordingly, as a matter of law, Defendants could not have breached any such duty.

### V. Defendants are Entitled to Judgment on Plaintiff's Fraud Claims

Although Count III of the Amended Complaint is entitled "Fraudulent Concealment by a Fiduciary," the allegations contained within that Count strongly suggest that the Plaintiff seeks relief based on fraudulent representation as well. Specifically, the Plaintiff claims that the Defendants made three statements that he relied upon to his detriment when selling his interests in the Partnership.

To prove fraud, the Plaintiff must prove each and every of the following elements by clear and convincing evidence: (1) a material representation which is made falsely; (2) with knowledge of its falsity or recklessness as to whether it is true or false; (3) with the intent of misleading another into relying on it; (4) justifiable reliance on the misrepresentation; and (5) the resulting injury was proximately caused by the reliance. Delahanty v. First Pa. Bank, N.A., 464 A.2d 1243 (Pa. Super. 1983).

#### (a) There is no evidence that the allegedly fraudulent statements qualify as fraudulent misrepresentations.

In the Complaint, Plaintiff claims that defendants made three separate misrepresentations that allegedly led him to sell his interests in Affordable Hospitality Associates.

The Honorable Kevin P. Castel
May 15, 2009
Page 5

Specifically, the Plaintiff claims that Shah and Patel misrepresented that the hotel market in Philadelphia was on a "steady decline and would continue that way for the foreseeable future." However, in order to qualify as a fraudulent misrepresentation, the statement must be about a *past* or *existing* material fact. Krause v. Great Lakes Holdings, Inc., 387 Pa. Super. 56 (Pa. Super. 1989). Accordingly, even assuming that such statements were made, they simply do not qualify as fraudulent statements. Predictions, even if wrong, are not fraudulent statements.

Second, Shah and Patel are also alleged to have uttered fraudulent remarks about the condition of the Philadelphia hotel market from 2001 through 2005. Although the Plaintiff continues to assert that the hotel market in Philadelphia was strong, the evidence in this case clearly shows that there was a substantial downturn in the Philadelphia market, especially in the Philadelphia Convention Center market of which the Hotel was a part, and that the downturn gravely affected this Hotel.

Third, the Plaintiff argues that Shah and Patel misrepresented the financial performance of the Hampton Inn. Again, besides his continued naked allegations and rush to judgment, the Plaintiff has not produced any evidence that demonstrates that the Hampton Inn was not performing as the Defendants claimed.

**(b) Plaintiff cannot demonstrate that he justifiably relied on alleged misrepresentations.**

The recipient of a fraudulent misrepresentation cannot recover if he blindly relies upon the misrepresentation, the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation. Silverman v. Bell Savings & Loan Assoc., 533 A.2d 110, 114-15 (Pa. Super. 1987).

In this case, the Plaintiff conducted only a cursory examination of the Partnership's books and records before he sold his interests to Defendant Nish. Although he was expressly offered an opportunity to inspect (either to confirm or refute the Defendants' allegations that the Hampton Inn was losing money every year), he did not do so. He was offered the chance to audit the Partnership's books and records, and again he failed to do so. Plaintiff testified that he had discussed with his accountant whether to audit the Partnership's books, but the Plaintiff ultimately decided against it after being provided with Partnership financial records in advance of his decision to sell his interests to Nish.

Defendants adamantly deny that they made misrepresentations about the Partnership's losses; however, even if they had made such misrepresentations, the evidence demonstrates that Plaintiff's reliance upon such alleged representations was not justifiable.

**VI. Defendants are Entitled to Judgment on Plaintiff's Unjust Enrichment Claims**

It has long been held in the Commonwealth [of Pennsylvania] that the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract. Third National & Trust Company of Scranton v. Lehigh Valley Coal Company, 353 Pa. 185, 44 A.2d 571, 574 (Pa. 1945).

In the case at bar, the relationship between the Plaintiff and the Defendants is founded upon an express *written* agreement, namely, the Limited Partnership Agreement of Affordable Hospitality Associates, which contains a Pennsylvania choice of law provision. Because there is such an express contract, Plaintiff's unjust enrichment claim must be dismissed as a matter of law.

The Honorable Kevin P. Castel
May 15, 2009
Page 6

    For the reasons set forth above, all of which will be expanded upon in a motion for summary judgment, the Defendants hereby request a pre-motion conference with the Court.

Respectfully submitted,

ANTHONY L. BYLER

ALB/mj

cc:    *VIA eMAIL AND REGULAR MAIL*

    JoAnne M. Bonacci, Esquire
    Monika S. Pundalik, Esquire